WILLING (UNITED STATES v.). See Case No. 16,727.

═══

# Case No. 17,765.

### WILLINGS et al. v. BLIGHT.

[2 Pet. Adm. 288.] [1]

District Court, D. Pennsylvania. 1800.

**PART OWNER OF VESSEL — REFUSAL TO JOIN IN VOYAGE — EFFECT.**

1. Freight is not legally demandable by recusant owner; but his share of the vessel must be secured to him.

[Cited in Davis v. The Seneca, Case No. 3,-650; Tunno v. The Betsina. Id. 14,236. Cited in brief in The Marengo, Id. 9,066. Approved in The Annie H. Smith. Id. 420; Coyne v. Caples. 8 Fed. 639; Scull v. Raymond, 18 Fed. 549.]

───

[1] [Reported by Richard Peters, Jr., Esq.]

2. Major part, in value, may fit out against consent of the minority; though they must communicate the design.

[Cited in Davis v. The Seneca, Case No. 3,-650; The Annie H. Smith, Id. 420.]

This was a petition to permit the majority of owners to proceed with the brig Amelia on a voyage, after giving stipulation for value of the recusant owner's share. In this case the proceedings will shew the course originally taken by the parties.[2] The court was clearly of opinion that the cause was one of admiralty jurisdiction; and that it had power to authorize the majority of owners to fit out and expedite the vessel on a voyage to be designated in the stipulation, and it directed accordingly. The question of freight was accommodated; and the court gave no final judgment. An opinion was however intimated that no freight was legally demandable by a recusant owner, who would neither sell at a reasonable appraisement, nor make advances for outfit; but his share of the vessel should be secured to him, that as he gains no profit, he may incur no loss. It appeared unreasonable, that those who were prepared, and desirous to put their property into a state of activity, should use their funds disproportionably for the benefit of a delinquent owner.

During the progress of the cause the following opinion was given by the court.

Whether the minority shall or shall not be compelled to sell, has not, in the opinion of the court, been here judicially determined. It is asserted (Beawes, Lex. Merc. 49) that if the majority of owners refuse to fit out, they are compellable to sell at a valuation; and so are part-owners, deficient and unable to fit out the vessel. This majority or minority, means those who hold the greater or less proportion of property. In the Sea Laws (3d Ed. 442), it is said, that "upon any probable design, the major part of the owners may, even against the consent, though not without the privity and knowledge of the rest, freight out their vessel to sea." "If it should so fall out that the major part, in number, protest against the voyage, and but one left that is for the voyage, yet the same may be effected by that party, if there be equality in partnership." "If it falls out that one is so obstinate, that his consent cannot be had, the law will enforce him either to hold or to sell his

---

[2] To the Honorable Richard Peters, Judge of the District Court of the United States, in and for the Pennsylvania District: The petition of Willings & Francis, and Samuel S. Cooper, respectfully sheweth: That your petitioners are owners of three-fourth parts of the brigantine Amelia. That your petitioners are desirous of sending the same vessel on a voyage to St. Sebastians in the kingdom of Spain, and from St. Sebastians back to Philadelphia. That the remaining one-fourth part of the same vessel belongs to Peter Blight of the city of Philadelphia, merchant, who refuses to join in the said voyage, or to suffer the same vessel to sail on your petitioners' own account. Your petitioners therefore respectfully pray, that this honorable court conforming to the established law and usage of the admiralty, will grant a citation returnable at the next court day to the said Peter Blight, to shew cause, if any he hath, why your petitioners should not be admitted to give security for the safe return of the same vessel, and thereupon proceed with her on the said intended voyage. Willings & Francis, Samuel S. Cooper. August 16th, 1800.

The words "and from St. Sebastians back to Philadelphia," inserted in the libel on motion.

In the District Court of Pennsylvania. Willings & Francis, versus Peter Blight. The answer of Peter Blight of the city of Philadelphia, merchant, to the petition of Willings & Francis and Samuel Cooper, respectfully sheweth, that the respondent admits that the said petitioners are owners of three-fourths parts of the brigantine Amelia; but this respondent avers that before the filing of the said petition he had assigned all his property, real and personal, whatsoever and wheresoever, to George Blight, Thomas Murgatroyd, and William Cole, in trust for the benefit of his creditors, and therefore he is no longer owner of the remaining one-fourth part of the same vessel, nor entitled without the directions. authority and approbation of his said trustees to join in the voyage in the said petition mentioned, or to suffer the said vessel to sail on the said petitioners' own account. And this respondent further answering saith, that he believes his said trustees would be willing, as he himself would be, to join in sending the said vessel on any voyage for the general benefit of the owners, provided such voyage was truly and fully made known to them; but the said petitioners have not set forth to what place or places it is intended to send the said vessel after her arrival at St. Sebastians; and this respondent has been informed and avers that it is not intended that the said vessel should return from St. Sebastians immediately to the port of Philadelphia, but that she should be employed by the said petitioners in a long, hazardous and circuitous voyage, not mentioned or described in the said petition. And this respondent further answering saith, that the petitioners have not in their said petition offered to purchase the late share of the respondent in the said vessel assigned as aforesaid to his said trustees; nor have they offered to sell the said vessel and distribute the money among the owners in proportion; nor have they offered to give security for paying any part of the profits of the voyage or freight of the said vessel, to this respondent or his said trustees, nor have they offered to give security for the return of the said vessel within a limited time. Wherefore and because this court has not jurisdiction of the case, the same not being a civil cause of admiralty and maritime jurisdiction, inasmuch as the said vessel was at the time of filing the said petition and now is within the body of the district of Pennsylvania, and not upon the high seas. The respondent prays that the said petition may be dismissed with costs. &c. A. J. Dallas, Proctor for the Respondent.

And now this twenty-second day of August, 1800, it is ordered by the court that the petitioners be permitted to send the brigantine Amelia in the petition mentioned on a voyage from Philadelphia to St. Sebastians, and back to Philadelphia, upon their entering into stipulation in the sum of six thousand dollars with approved security, as well for the safe return of the same vessel to Philadelphia, as for the payment to the said respondent, his heirs, executors and administrators, of one-fourth of the freight[*] of the same vessel for the said voyage out and home. deducting all reasonable and just mercantile charges.

---

[*] Freight was inserted agreeably to the consent of the majority of owners.

proportion; but if he will set no price, the rest may rig her out, at their own costs and charges, and whatsoever freight she earns, he is not to have any share or benefit in the same. But if such vessel happens to miscarry, or to be cast away, the rest must answer him his part, or proportion, in the vessel. But if it should fall out, that the major part of the owners in value, refuse to set out the vessel to sea; there by reason of the inequality, they may not be compelled; but then such vessel is to be valued and sold: the like, whether part of the owners become ·deficient, or unable to, set her forth to sea." The sixth article of the twenty-third section of the ordinances of Louis XIV. of France, enacts, that "no person may constrain his partner to proceed to the sale of a ship, except the opinions of the owners be equally divided about the undertaking of the voyage." Here "equally" means equality of property.

It is a principle discernable in all maritime codes, that every encouragement and assistance should be afforded to those, who are ready to give to their ships constant employment; and this, not only for the particular profit of owners, but for the general interests and prosperity of commerce. If agriculture be, according to the happy allusion of the great Sully, "one of the breasts from which the state must draw its nourishment," commerce is certainly the other. The earth, the parent of both, is the immediate foundation and support of the one, and ships are the moving powers, instruments and facilities of the other.—Both must be rendered productive by industry and ingenuity. The interests and comforts of the community will droop, and finally perish, if either be permitted to remain entirely at rest. The former will less ruinously bear neglect, and throw up spontaneous products; but the latter require unremitted employment, attention and enterprize, to ensure utility and profit.[3] A privation of freight, the fruit and crop of shipping, seems therefore to be an appropriate mulct, on indolent, perverse, or negligent part-owners. The drones ought not to share

---

[3] The following authorities were cited and furnished by the counsel, on the questions which arose in this cause. The jurisdiction of the court of admiralty. Denied—Hardr. 473; Carth. 26. Allowed—1 Ld. Raym. 223; 2 Strange, 890: 2 Ld. Raym. 1285. Stipulation must be—1st. To secure safe return from the voyage, or pay value of share. 2d. Within a stipulated or reasonable time. Voyage must be designated. Though the vessel be put to sea without consent, the minority should be informed of the voyage intended. Moll. de J. Mar. 220; Lex. Merc. Red. 52. Freight. to dissenting part-owners. Denied—2 Ch. Cas. 36; 1 Vern. 297; Amb. 255. See 6 Vin. Abr. tit. "Mariners." Allowed—1 Show. 13. Id.;† 6 Mod. 162; Fitzg. 197; Skin. 230. See, also, 1 Treatise on Commerce, p. 29. 2 Browne, Civ. & Adm. Law, p. 131.

†The cause having ended in a compromise, these authorities were not all read or examined.

---

in the stores, acquired and accumulated by the labour, activity, foresight and management of the bees. Although the hive may be common property, it is destructively useless to all, if not furnished with means of profit and support by industry and exertion; which should be jointly applied by all, before they participate in beneficial results. Nor should the idle and incompetent be permitted to hold it vacant and useless to the injury and ruin of the industrious and active.

This point see.ns not yet to be so decided as not to admit of question. The authorities in the British books, lead to opposite conclusions; and leave the subject liable to controversy